UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                v.<br><br>TROY JAMAL CHAVIOUS,<br>                Defendant. | Criminal No. 06-227-7 |

**DETENTION MEMORANDUM**

The Defendant, Troy Jamal Chavious, also known as "Little Troy", also known as "L.T.", has been charged by indictment with conspiracy to distribute and possess with intent to distribute one kilogram or more of phencyclidine ("PCP"), a Schedule II controlled substance, in violation 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1) and § 841 (b)(1)(A)(iv); unlawful possession with intent to distribute and distribution of one kilogram or more of PCP, and aiding and abetting the same, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841 (b)(1)(A)(iv) and 18 U.S.C. § 2; unlawful distribution of one hundred grams or more of PCP in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841 (b)(1)(A)(iv); and criminal forfeiture in violation of 21 U.S.C. § 853 and § 853(p). The Government requested a detention hearing, which was held on August 22, 2006. At the conclusion of the detention hearing, the Court found that the Defendant should be held without bond. This memorandum is submitted to comply with the statutory obligation that "the

judicial officer shall include written findings of fact and a written statement of the reasons for the detention." 18 U.S.C. § 3142(i)(1).

## **Findings of Fact**

At the detention hearing, the Government proffered that the Defendant was involved in a conspiracy to import and distribute gallons of PCP to the Washington, DC metropolitan area, which took place from approximately September 2005 through at least July 27, 2006. According to the government, Mr. Jackson and Mr. Hopkins, as leaders of the conspiracy, purchased gallons of PCP from Mr. Tony Fitzgerald Hilt, also known as "T." Mr. Hilt, a member of the Los Angeles, CA based gang Mona Park Crips, sold PCP to Mr. Jackson, Mr. Hopkins, or to various other intermediaries of the conspiracy.[1] Mr. Jackson and Mr. Hopkins imported the PCP from California to Washington, DC by enlisting female couriers to individually transport a gallon of PCP in their checked-in luggage from Long Beach, CA to Washington, DC.[2] The couriers and the conspirators[3] would fly from Dulles International Airport ("IAD") located in Dulles, VA, to Long Beach Airport ("LGB") located in Long Beach, CA by commercial airlines. The couriers included:

---

[1] The sale transaction would occur at Mr. Hilt's home in Los Angeles, CA.

[2] After the trips were complete, Mr. Jackson and other conspirators paid the couriers for their flight, hotel and travel expenses with travelers checks, Western Union transfers, and "MoneyGrams." Many of the MoneyGrams were purchased from a Shopper's Food Warehouse grocery store, which Mr. Jackson frequents.

[3] The Government proffers that Mr. Jackson and Mr. Hopkins usually accompanied the couriers on their trips to and from California. However, at times the couriers were accompanied by other conspirators.

Ms. Tinesha Denise Adams,[4] Ms. Shawntae Anderson,[5] and Ms. Lanika Mercedes Franklin.[6] After purchasing the PCP from Mr. Hilt, the conspirators, with the assistance of the couriers, would purchase shampoo, lotion, and Listerine bottles and empty the contents of the bottles to later fill them up with PCP. The couriers carried these bottles in their checked in luggage on their flight back from LGB to IAD.

The flight records indicate that the conspirators made about 25 flights between the Washington, DC area to Long Beach, CA from September 2005 through at least July 27, 2006.[7] Once the PCP was in the Washington, DC area, the conspirators would dilute the PCP with starter fluid and sell the diluted PCP to wholesalers and distributors. The conspirators would meet to sell the PCP and exchange money at various locations in Washington, DC and suburban Maryland, including Ms. Wanda Owens's[8] apartment, Mr. Hargrove's apartment, Mr. Hopkins's father's home, and the Safari Steakhouse.

The Defendant, as the nephew of Mr. Hopkins, was involved in the conspiracy at a high level. In February 2006, he had come from the Virginia Beach area to live in suburban Maryland at the

---

[4] Ms. Adams made 12 trips.

[5] Ms. Anderson made 11 trips.

[6] The exact number of trips that Ms. Franklin made is unknown, however she did travel numerous times.

[7] The flight records indicate that the conspirators used JetBlue, Southwest, and AmericaWest airlines. It is estimated that at least one gallon of PCP was carried back from Long Beach on each trip, which equals about 25 gallons of diluted PCP. One gallon of liquid PCP equals approximately 3.7 kilograms of the drug. The Government proffered that the actual amount of PCP imported actually exceeds the special allegation amount of 20 kilograms listed in the indictment. In a superceding indictment, the Government will allege the full amount.

[8] Ms. Wanda Owens is Mr. Jackson's sister.

home of his grandparents, a site of much PCP activity.[9] The Defendant flew to the Los Angeles area regularly for Mr. Hopkins and Mr. Jackson to make PCP purchases. The Government proffered 14 specific dates between February 2006 and May 2006 on which there is a record of travel by the Defendant from either IAD to LGB, or LGB to IAD.

In addition to travel records, paper records show that the Defendant sent money via MoneyGrams to other people involved in the conspiracy. For example, on May 21, 2006, the Defendant sent $350 to the drug courier Ms. Adams. The Government proffered that this amount of money is consistent with the amount used by the PCP couriers for travel incidentals. Three days after the May 21, 2006 MoneyGram was sent, two gallons of PCP were seized at IAD from the checked-in luggage of Ms. Adams and Ms. Franklin.

During May 2006, a wiretap had been placed on Mr. Jackson's cellular phone. Through the wiretap, authorities recorded Mr. Jackson discussing drugs, money, couriers, and the workings of the distribution cycle. On many occasions, authorities recorded Mr. Jackson discussing the Defendant in relation to the conspiracy. Some discussions concerned dispatching the Defendant to do the bidding of Mr. Hopkins and Mr. Jackson. For example, on May 23, 2006, Mr. Hopkins and Mr. Jackson discussed Mr. Jackson's need for a quantity of PCP. Mr. Hopkins agreed during that conversation to send the Defendant to obtain more PCP. During other phone conversations, Mr. Jackson can be heard giving instructions for the Defendant concerning PCP deliveries and meeting places.

---

[9] The Defendant's grandparents are also Mr. Hopkins's parents.

**Discussion**

The Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.* (hereinafter "the Act"), provides, in pertinent part, that if a judicial officer finds that "no condition or combination of conditions will reasonably assure the appearance of the person . . . [or] the safety of any other person and the community, such judicial officer shall order the detention of the [Defendant] before trial." 18 U.S.C. § 3142(e). Danger to the community alone is a sufficient basis upon which to order pretrial detention, if the judicial officer finds by clear and convincing evidence that Defendant's pretrial release would constitute an unreasonable risk of danger to the community. *United States v. Salerno*, 481 U.S. 739, 755 (1987); *United States v. Perry*, 788 F.2d 100, 113 (3d Cir. 1986); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986). When, as here, there is probable cause to believe that a Defendant has committed a violation of the Controlled Substance Act for which a maximum penalty of 10 years or more is prescribed, a rebuttable presumption arises that the Defendant constitutes a danger to the community, and no pretrial release condition or combination of conditions may be imposed to assure his future presence in court or to reasonably assure the safety of the community.

Here, the government seeks pre-trial detention on the grounds that the Defendant poses a danger to the community and a risk of flight. In determining whether there are conditions of release which will reasonably assure the safety of the community, the judicial officer shall take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the Defendant; (3) the Defendant's history and characteristics, including the Defendant's ties to the community; and (4) the nature and seriousness of the danger

- 5 -

to any person or to the community which would be posed by the Defendant's release. *See* 18 U.S.C. §3142(g).

The first factor, the nature and circumstances of the offense, favors detention. The Defendant is charged with conspiracy to distribute massive amounts of PCP into the Washington, DC area.

The second factor, the weight of the evidence, also favors detention. The Government obtained airline records of the Defendant's regular travel between IAD and LGB. The Government also has records of the Defendant sending money to drug-courier conspirators for travel incidentals related to the conspiracy. Also, the Government has oral evidence from a wiretap placed on Mr. Jackson's phone. The Defendant was discussed during several phone conversations by Mr. Jackson in connection with the conspiracy.

The third factor, the history and characteristics of the Defendant, supports pretrial detention. The Defendant was on probation for a separate offense during the time of his involvement with the conspiracy.

The fourth factor, the nature and seriousness of the danger to the community should the Defendant be released, also favors detention. Although the instant charges did not involve violent activity, the Defendant was heavily involved in importing a massive amount of PCP, a dangerous and illegal substance that causes violence in the Washington, DC area.

### Conclusion

Based upon consideration of all the evidence and the factors set forth in 18 U.S.C. § 3142(g), the Court concludes that the evidence clearly and convincingly establishes that the Defendant's

pretrial release would constitute an unreasonable risk of danger to the community. The presumption in favor of detention establishes by the statute has not been overcome by the Defendant in this case. Therefore, the government's motion for pretrial detention is granted and the Defendant is to be held without bond pending further actions of this court.

Dated: August  24th  , 2006                                      /s/
                                                                 ALAN KAY
                                                                 UNITED STATES MAGISTRATE JUDGE